**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**


CERTAIN UNDERWRITERS AT LLOYD'S,  )
LONDON SUBSCRIBING TO                        )
CERTIFICATE NO. IPSI 12559,                      )
                                                                        )
                    Plaintiffs,                                    )
                                                                        )
            v.                                                       )            No. 4:13-CV-193 CAS
                                                                        )
SSDD, LLC,                                                   )
                                                                        )
                    Defendant.                              )


**<u>MEMORANDUM AND ORDER</u>**

This declaratory judgment matter is before the Court on defendant SSDD, LLC's ("SSDD")

motion to dismiss plaintiffs' Amended Complaint pursuant to Rule 12(b)(6), Federal Rules of Civil

Procedure.  Plaintiffs Certain Underwriters at Lloyd's, London Subscribing to Certificate No. IPSI

12559 (collectively, "Underwriters") oppose the motion and it is fully briefed.  For the following

reasons, the motion will be denied.

**Background**

The Amended Complaint ("Complaint") alleges that Underwriters issued a Commercial

Property Policy of insurance (the "Policy") to SSDD with a limit of $800,000 per occurrence,

effective April 8, 2012 through April 8, 2013, for a building described in the Policy's declarations

page as a "concrete brick church (LRO) at 4518 Blair, St. Louis, MO 63107" (the "Property").  On

May 24, 2012, SSDD reported a vandalism claim to Underwriters with a date of loss of May 18,

2012.  On or around June 17, 2012, a fire occurred at the Property and SSDD reported the fire to

Underwriters on June 18, 2012.  On July 24, 2012, SSDD provided notice of a claim for hail damage

to the Property as a result of an April 28, 2012 hail storm.

The Complaint asserts that SSDD retained a public adjusting firm, Continental Adjusters, Inc., to provide it with an estimate of the value of each of the three claims.  Underwriters retained its own consultants and experts to assist in determining the Actual Cash Value of each loss.  SSDD's adjuster estimated the fire loss to the Property to be approximately $2.4 million, the vandalism loss to be approximately $2.5 million, and the hail damage loss to be approximately $452,000.  Using calculations provided by its experts and applying policy deductibles, Underwriters estimated net loss potentially covered for the vandalism claim to be approximately $159,000, for the fire claim to be approximately $201,000, and for the hail claim to be approximately $11,000, and determined that the appropriate measure of loss sustained by SSDD was $372,840.98.

The Complaint asserts that on December 28, 2012, Underwriters sent a letter to SSDD offering a conditional payment of $372,840.98 in "full and final satisfaction of the three claims subject to a complete reservation of rights, since it is Underwriters' position that coverage is questionable and the Policy is subject to rescission."  Complaint, Ex. F at 1.  After discussing the three claims and the valuation of each, as well as various Policy provisions, id. at 1-13, Underwriters' letter asserted that the Policy is subject to rescission based on material misrepresentations or omitted facts in the applications, and that it reserved its right to rescind the Policy.  Id. at 13-14.  Underwriters' letter also asserted that a Policy exclusion, for loss or damage resulting from SSDD's neglect to use all reasonable means to preserve the Property from further damage at and after the time of loss, applied to preclude coverage for a majority of the damages encompassed in the vandalism and fire claims.  Id. at 14.  The letter concluded,

> In light of the foregoing, it is Underwriters position that coverage is precluded and/or limited for a significant portion of this loss and that the Policy is subject to rescission.  However, Underwriters will be sending a conditional payment in the amount of $372,840.98, as set forth above, in full and final satisfaction of SSDD's claims, subject to the reservation of rights set forth herein.  Underwriters

2

further reserve their rights with respect to any and all claims and defenses which they may have under the Policy, including the right to rescind the Policy.  They also reserve their right to assert any other defenses they may discover in the future in connection with this matter.  Nothing said in this letter, or left unsaid, shall be deemed to be a waiver thereof.

Id. at 15.

The Complaint alleges that Underwriters asked SSDD to execute a W-9 so that the $372,840.98 payment could issue, but SSDD refused to execute the W-9 and, as a result, Underwriters continue to hold the conditional payment in trust.

On January 29, 2013, Underwriters filed the instant action for declaratory judgment pursuant to Rule 57, Fed. R. Civ. P., and 28 U.S.C. § 2201.  Jurisdiction of the case is based on diversity of citizenship, 28 U.S.C. § 1332.  The Complaint asserts claims for rescission of the Policy based on material misrepresentations and/or omissions in the Policy application (Count I); in the alternative to Count I, for a declaration that the Policy is void based on concealment or misrepresentation of material facts concerning the Property under the Policy's Commercial Property Condition A (Count II); and for a declaration that all loss occurring after May 22, 2012 is barred by the Exclusion 2(m) of the Policy's Causes of Loss – Special Form, that precludes coverage for loss or damage caused by or resulting from the insured's neglect to use all reasonable means to preserve the Property from further damage at and after the time of loss.[1]

---

[1]On January 29, 2013, approximately twenty minutes before this action was filed, SSDD filed a Petition in state court to compel Underwriters to participate in an appraisal, name an appraiser and complete the appraisal process pursuant to the Policy's Building and Personal Property Coverage Form, Section E, Paragraph 2, to determine all appraisable issues, including but not limited to the amount of loss or damage caused by the three separate claims for vandalism, fire and hail loss.  Underwriters removed the Petition to this Court on February 11, 2013 based on diversity of citizenship jurisdiction, and the case was assigned to the undersigned.  See SSDD, LLC v. Underwriters at Lloyd's, London, No. 4:13-CV-258 CAS (E.D. Mo.).  Underwriters has filed a motion to stay SSDD's action to compel an appraisal pending resolution of the issues raised in this action, which is fully briefed, and the Court takes judicial notice of the briefing on that motion.

**Legal Standard**

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint.  To survive a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A plaintiff need not provide specific facts in support of its allegations, Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level."  Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (citing Twombly, 550 U.S. at 555 & n.3).  This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."  Id. at 562 (quoted case omitted).  This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]."  Id. at 556.

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," id. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief.  Twombly, 550 U.S. at 555-56; Fed. R. Civ. P. 8(a)(2).  The principle that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions, however.  Iqbal, 129 S. Ct. at 1949-50 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  Although legal conclusions can provide the

4

framework for a complaint, they must be supported by factual allegations. Id. at 1950. Plausibility is assessed by considering only the materials that are "necessarily embraced by the pleadings and exhibits attached to the complaint[.]" Whitney v. Guys, Inc., 700 F.3d 1118, 1128 (8th Cir. 2012) (quoted case omitted). The plausibility of the plaintiff's claim is reviewed "as a whole, not the plausibility of each individual allegation." Zoltek Corp. v. Structural Polymer Grp., 592 F.3d 893, 896 n.4 (8th Cir. 2010).

**The Parties' Arguments**

SSDD moves to dismiss Underwriters' Complaint for failure to state a claim upon which relief may be granted, on the basis the Complaint fails to allege that Underwriters has complied with all conditions precedent to maintaining suit on the Policy. Specifically, SSDD asserts that Underwriters' Complaint fails to allege it has satisfied the appraisal condition of the policy. The Policy's appraisal provision states in pertinent part:

> If we [Underwriters] and you [SSDD] disagree on the value of the property or the amount of the loss, either may make a written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> a. Pay its chosen appraiser; and
>
> b. Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we [Underwriters] will still retain our right to deny the claim.

Complaint, Ex. F, Policy, Building and Personal Property Coverage Form, ¶ E.2.

SSDD contends that because it invoked its right to an appraisal under the Policy prior to Underwriters filing its Complaint in this matter, Underwriters must allege that it has satisfied all

conditions precedent to the filing of its declaratory judgment action, including the appraisal provision, or the action is premature and the Complaint fails to state a claim upon which relief may be granted.  SSDD cites Harris v. American Modern Home Insurance, 571 F.Supp.2d 1066, 1081 (E.D. Mo. 2008) ("[A] properly demanded appraisal prohibits **a party** from instituting a legal action")[2] (emphasis added by SSDD), and GBC & A. Richardson v. Merrimack Mutual Fire Insurance Co., 2000 WL 297171, at *4 (S.D.N.Y. Mar. 21, 2000) ("If a 'defendant's demand for an appraisal is valid, [a] plaintiff is contractually bound to exhaust the appraisal process before bringing suit on her claim.'").

SSDD relies heavily on Underwriters at Lloyd's of London v. Tarantino Properties, Inc. 2012 WL 3835385 (W.D. Mo. Sept. 4, 2012) ("Tarantino").  In Tarantino, Underwriters filed a declaratory judgment action denying coverage for much of the insured's loss, and the insured filed a counterclaim to compel an appraisal under the policy at issue.  SSDD states that the district court in Tarantino found Underwriters improperly attempted to characterize the parties' dispute as one of coverage, instead of loss, and stayed Underwriters' declaratory judgment action and ordered that an appraisal occur, concluding that appraisal is "appropriate for determining the extent of liability where the insurer admits that there is a covered loss, but disputes the amount of damage covered." Id. at *3.  SSDD argues that Underwriters is "attempting to employ the same tactics as it did in Tarantino in an attempt to avoid appraisal by trying to frame the issue as a coverage dispute susceptible to a declaratory judgment action and not a disagreement over the amount of the loss.

---

[2]This quotation does not appear in the Harris case.  The language actually appears in TAMKO Building Products, Inc. v. Factory Mutual Insurance Co., 2009 WL 5212999, at *3 (E.D. Mo. Dec. 30, 2009), and the entire quote is, "The parties do not dispute that, under the terms of the policy, a properly demanded appraisal prohibits a party from instituting a legal action."  As discussed *infra*, the policy at issue in TAMKO actually provided only that the insured could not file suit unless it had complied with the appraisal condition.

As in <u>Tarantino</u>, Underwriters has tacitly admitted that there is some coverage for the Claims through its action in adjusting the Claims and coming to a determination of the value of the Claims (the $372,840.98 Initial Offer)."  SSDD's Mem. Supp. Mot. Dismiss at 7.

Underwriters respond that SSDD's motion to dismiss should be denied because the motion (1) does not attack the sufficiency of the allegations of the Complaint and instead offers a straw man argument that the Complaint is deficient because it fails to allege that Underwriters has satisfied the appraisal condition; (2) improperly assumes that compliance with the Policy's appraisal provision is a condition precedent to filing suit; and (3) improperly argues the merits of a coverage question, i.e., whether the appraisal provision preempts Underwriters' declaratory judgment action.

Underwriters contend SSDD's assumption that compliance with the appraisal provision is a condition precedent to this action is based on a misinterpretation of the Policy's "no legal action" provision, as SSDD contends that suit may not be filed by "a party" unless there is full compliance with all terms of the Coverage Part, including an appraisal.  Underwriters state that the "Legal Action Against Us" provision of the Policy, which SSDD does not quote in its memorandum, undermines SSDD's position.  The relevant language reads:

**D.  LEGAL ACTION AGAINST US**

*No one may bring a legal action against us* under this Coverage part unless:

1. There has been full compliance with all of the terms of this Coverage Part:

Complaint, Ex. A, Commercial Property Conditions (italics added).

Underwriters state that the "us" in the "no legal action" provision quoted above is Underwriters, and the provision prohibits an insured from bringing a lawsuit against Underwriters until there has been "full compliance with all the terms of this Coverage Part."  Underwriters contend that the provision does not prohibit them from filing suit against an insured, and therefore

the Appraisal provision cannot be a condition precedent to filing suit, but rather is a condition subsequent to coverage.

Underwriters assert that the Harris and GBC & A. Richardson cases relied on by SSDD are distinguishable because those cases the questions of when the insured has satisfied the "full compliance" provision and when the insured is excused from satisfying the provision, which are not at issue here. Underwriters contend that the plain language of the "no legal action" provision in the Policy resolves the question without requiring further analysis and, because Underwriters, not SSDD, filed the action for declaratory judgment, the Court need not consider whether there has been "compliance with all the terms of this Coverage Part."

Underwriters also argue that the appraisal process set forth in the Policy is not appropriate where the parties have a coverage dispute, as here, because the Policy language authorizes an appraisal where the parties "disagree on the value of the property or the amount of the loss." Underwriters contend that the dispute here is far more significant than a disagreement over value or amount of loss, as they assert that the Policy should be rescinded for material misrepresentations and/or omissions in the application, and that SSDD has failed to fulfill other obligations under the Policy. Underwriters assert that a determination whether the Policy is subject to rescission is critical to the action and must be determined first.

Underwriters argue that the Tarantino case on which SSDD relies is factually distinguishable from the present case on two main grounds: First, Underwriters in Tarantino did not argue that the policy should be rescinded in its entirety due to the insured's misrepresentations during the application process, as they do here, and if Underwriters had made such an argument in Tarantino, the court would have been required to address whether the policy was void *ab initio* prior to addressing the applicability of the appraisal provision. Second, Underwriters in Tarantino admitted

there was a covered loss.  Here, in contrast, Underwriters assert they have never admitted that any of the alleged losses are covered under the Policy and have repeatedly advised SSDD that, in addition to their position that the Policy should be rescinded, there are also several Policy terms that have not been satisfied and certain exclusions that may apply to some of the losses.  Underwriters also note that while Underwriters in Tarantino did not notify the insured of their coverage position until they filed a declaratory judgment action, Tarantino, 2012 WL 3835385 at *2, here Underwriters explained their coverage position to SSDD prior to filing the action.

Underwriters reject SSDD's argument that they tacitly admitted there is some coverage for the claims by adjusting the claims and coming to a determination of their value.  Underwriters argue that the December 28, 2012 conditional settlement offer letter was not an admission of coverage, but instead was explicitly "subject to a complete reservation of rights, since it is Underwriters' position that coverage is questionable and the Policy is subject to rescission."   Complaint at ¶ 48. Underwriters argue that the conditional settlement offer to pay was no more of an admission than is any action undertaken by an insurer pursuant to a reservation of rights.  Underwriters state that under Missouri law, on proper notice to the insured, an insurer may defend its insured under a reservation of rights letter but reserve the right to later disclaim coverage, and then may file a declaratory judgment action if the insured rejects the defense, citing Truck Insurance Exchange v. Prairie Framing, 162 S.W.3d 64, 88 (Mo. Ct. App. 2005).

Underwriters argue they have followed the law by issuing a reservation of rights letter, reserving their defenses, and filing a declaratory judgment action, and have admitted nothing. Underwriters also argue they would suffer hardship if required to participate in the appraisal process without having the coverage questions decided, and note that the Policy's appraisal provision states they retain the right to deny the claim notwithstanding an appraisal.

SSDD replies that compliance with an appraisal provision is a valid precondition to filing a suit on an insurance policy under Missouri law, citing TAMKO Building Products, Inc. v. Factory Mutual Insurance Co., 2009 WL 5216999, at *3 (E.D. Mo. Dec. 30, 2009) (citing Harris, 571 F.Supp.2d at 1081), and that Underwriters cite no cases holding otherwise.  SSDD further replies that Underwriters' argument, that an appraisal is not appropriate because Underwriters has alleged the Policy should be rescinded, ignores the fact that the Policy provides either party may demand an appraisal, and that Underwriters still retains the right to deny the claim even after an appraisal is complete.  Thus, SSDD contends that the "no legal action" provision is irrelevant to resolution of its motion because it is undisputed that SSDD has demanded an appraisal and Underwriters would retain the right to deny the claim even after the appraisal is complete.

SSDD further replies that the dispute between the parties is over the amount owed to it, not coverage, as it is undisputed that Underwriters offered to pay SSDD the full value of what Underwriters' own adjusters believe to be the value of the claims.  SSDD argues that if Underwriters actually believed there were coverage issues it would not have made a settlement offer, and that its offer "certainly did not reflect 'questionable coverage'" but rather is an admission of coverage. SSDD Reply at 4.

Finally, SSDD replies that the Tarantino case is persuasive here because Underwriters, as they did in Tarantino, are attempting to avoid appraisal by framing the issue as a coverage dispute susceptible to a declaratory judgment action and not a disagreement over the amount of loss.

**Discussion**

The Court has considered the parties' arguments and cited cases.[3]  Having done so, the Court agrees with Underwriters that SSDD's motion to dismiss improperly assumes that compliance with the Policy's appraisal provision is a condition precedent to Underwriters' filing of a declaratory judgment action.  SSDD has not cited any case to support its argument that Underwriters must plead that it has satisfied the appraisal provision of the Policy prior to bringing this declaratory judgment action.  The motion to dismiss should therefore be denied.

This Court's Harris and TAMKO decisions, and the New York district court's GBC & A. Richardson decision, on which SSDD relies for the proposition that "a party" may not bring suit until all policy provisions have been satisfied, are readily distinguishable.  Each of those cases concerned whether an insured satisfied a "full compliance" provision and/or when the insured was excused from satisfying such a provision.  The case before the Court does not present those issues.  Further, none of the decisions involve a declaratory judgment action by an insurer, and none address the issue before this Court – whether an insurer must plead in a declaratory judgment complaint that it has satisfied the insurance policy's appraisal provision, and whether it fails to state a claim upon which relief may be granted if it fails to do so.

In Harris, 571 F.Supp.2d 1066, this Court addressed the defendant insurer's motion for summary judgment.  Before suit was filed, the parties began the formal appraisal process, but it was unsuccessful as they were unable to reach an agreement on the amount of damages and the process eventually broke down.  The insured then filed suit against the insurer for breach of contract and statutory vexatious refusal to pay.  The insurer argued that under the policy's terms, no lawsuit could

---

[3]The parties appear to agree that Missouri law governs their dispute.

11

be brought against it unless all policy provisions had been complied with.[4]  The issue for the Court was "whether the plaintiff must go through a successful appraisal before he may sue under the insurance policy."  Id. at 1081.  The Court concluded that under Missouri law, an insured could bring suit where the appraisal process failed but the failure was not the insured's fault, and determined that whether the failure of the appraisal was the fault of the insured or the insurer was a question for the jury.  Id.  Harris is therefore in applicable to the issues presented by this case.

In TAMKO, the insured filed a breach of contract action and the defendant insurer sought to stay the case and compel an appraisal under the policy's appraisal provision.  The policy in TAMKO provided that "no suit 'will be sustained' unless the insured has complied with the policy provisions," 2009 WL 5216999, at *2 (emphasis added).  This Court stated that "under the terms of the policy, a properly demanded appraisal prohibits a party from instituting a legal action."  Id. at *3 (citing Harris).  Under the policy language at issue in TAMKO, only the insured was required to fulfill the policy condition prior to filing suit, so the Court's use of the term "party" should not be expanded beyond that context.  The insured argued it did not have to comply with the appraisal provision because the insurer waived its right to an appraisal and was estopped from asserting that right, but the Court rejected those arguments and stayed the insured's suit against the insurer until an appraisal was completed.  Id.  TAMKO therefore offers no support for SSDD's position.

---

[4]The "no legal action" provision at issue in Harris provided as follows:

**11.  Suit Against Us.**  No action can be brought unless the policy provisions have been complied with and the action is started within ten years after the date of loss.

Finally, in GBC & A. Richardson, 2000 WL 297191, the New York district court addressed the parties' cross-motions for summary judgment.  The defendant insurer moved for summary judgment on the basis that the policy required the plaintiff insured to submit to an appraisal on demand, and the plaintiff had refused to do so.  Id. at *4.  Similar to the instant case, the policy had a "no legal action" provision that stated, "No one may bring a legal action against us unless . . . there has been full compliance with all the terms of this insurance."  Id.  Applying New York law, the court concluded that if an insurance company's "demand for an appraisal is valid, [a] plaintiff is contractually bound to exhaust the appraisal process before bringing suit on her claim."  Id. (cited case omitted).  The court also noted that under New York law "the appraisal clause only applies to a case where the disagreement is to the amount of loss or damage and not where a company denies liability."  Id. at *5.  The court concluded that the dispute involved a disagreement regarding the value of the insured's losses, and held that the insured must submit the dispute to appraisal pursuant to the terms of the policy.  Id.  In the instant case, in contrast, the insured, not the insurer, is seeking an appraisal, the policy language does not require the insurer to fully comply with all policy terms prior to filing suit, and the insurer has denied liability for the claims and asserts that the Policy is subject to rescission based on material misrepresentations and omissions in the application.

The Court finds there is nothing in the language of the Policy in this case that prohibits Underwriters from filing suit for declaratory judgment.  The "no legal action" provision does not affect Underwriters' ability to file suit.  As a result, the Court does not need to consider whether there has been "compliance with all the terms of this Coverage Part" in determining whether Underwriters' Complaint states a claim upon which relief may be granted, and the motion to dismiss should be denied.

Even if the Policy language required Underwriters to participate in an appraisal prior to filing suit, which it does not, compliance with the appraisal provision would not be a condition precedent to maintaining this action.  Under Missouri law, whether an appraisal is a condition precedent to filing suit depends on whether the disputed between the insured and the insurer is properly characterized as a coverage dispute or a disagreement over the amount of loss.  The Missouri Supreme Court has held that the appraisal process is not appropriate for resolving questions of coverage.  See Hawkinson Tread Tire Service Co. v. Indiana Lumbermens Mutual Insurance Co., 245 S.W.2d 24, 28 (Mo. 1951) (where there was a meaningful dispute over the scope of coverage, and the disagreement over the amount of loss was "incidental to the actual underlying (legal) controversy between the two parties as to the meaning of the insurance contract and its application to the facts," appraisal was not appropriate and was not a condition precedent to filing suit); see also D.R. Sherry Const., Ltd., v. American Family Mut. Ins. Co., 316 S.W.3d 899, 902 (Mo. 2010) (en banc) ("[T]he interpretation of an insurance contract is generally a question of law, particularly in reference to the question of coverage.").  In contrast, where the parties' disagreement is over the amount of loss, appraisal is appropriate.  See, e.g., Lance v. Royal Ins. Co., 259 S.W. 535, 535 (Mo. Ct. App. 1924) ("A provision in an insurance policy for the amount of the loss to be ascertained by appraisers in case of disagreement in relation thereto is binding and enforceable, and must be complied with before a right of action accrues to the insured.").

Underwriters allege in the Complaint that the Policy should be rescinded for SSDD's material misrepresentations and/or omissions in the application,[5] and that SSDD has failed to fulfill

---

[5]Under Missouri law, a misrepresentation in an application for an insurance policy may be cause for voiding the policy.  Coots v. United Employers Federation, 865 F. Supp. 596, 603 (E.D. Mo. 1994) (cited cases omitted).

other obligations under the Policy.  Accepting these allegations as true, the Court finds that the Complaint presents primarily a coverage dispute, and the dispute over the amount of loss is incidental.  As a result, the appraisal process would not be a condition precedent to suit.

For this reason, the instant case is distinguishable from Tarantino.  Underwriters' declaratory judgment action in Tarantino only asked the court to determine to what extent the policy's exclusions and endorsements applied, see 2012 WL 3835385, at *3, and did not assert that the policy should be rescinded in its entirety due to the insured's misrepresentations or omissions in the application, as here.  As a result, the court concluded that there was a covered loss, the dispute between Underwriters and the insured was over the amount of loss, and appraisal was required.  Id. at **3-4.  Because the instant case presents a significant coverage question, the appraisal remedy that was appropriate in Tarantino is not appropriate here.  See Hawkinson, 245 S.W.2d at 28 (appraisal is not appropriate or a precondition to filing suit where a meaningful question about the scope of coverage exists).

Finally, the Court rejects SSDD's argument that an appraisal is a precondition to suit and this case must be dismissed because Underwriters' conditional settlement offer letter was a tacit admission of coverage.  The letter stated that the conditional offer of settlement was made subject to Underwriters' explicit reservation of rights with respect to any and all claims and defenses under the Policy, including the right to rescind the Policy, and further stated it was Underwriters' position that coverage was precluded and/or limited for a significant portion of the loss and that the Policy was subject to rescission.  Under these circumstances, the Court declines to find that the conditional settlement offer was a tacit admission of coverage sufficient to overcome the allegations of the Complaint and require dismissal.

**Conclusion**

For the foregoing reasons, the Court finds that defendant SSDD's motion to dismiss plaintiffs' Amended Complaint for failure to state a claim upon which relief may be granted should be denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendant SSDD, LLC's motion to dismiss plaintiffs' Amended Complaint is **DENIED**.  [Doc. 14]

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  31st  day of May, 2013.

16