# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, | ) | |
| LONDON SUBSCRIBING TO | ) | |
| CERTIFICATE NO. IPSI 12559, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:13-CV-193 CAS |
| | ) | |
| SSDD, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

In this diversity matter, plaintiffs Certain Underwriters at Lloyd's, London Subscribing to Certificate No. IPSI 12559 (collectively, "Underwriters") seek a declaration that a commercial property insurance policy they issued to defendant SSDD, LLC ("SSDD"), is rescinded, void and unenforceable based on material misrepresentations and/or omissions in the policy application (Count I); in the alternative, plaintiffs seek a declaration that the policy is void based on concealment or misrepresentation of material facts concerning the property under the policy's Commercial Property Condition A (Count II); and a declaration that all loss occurring after May 22, 2012 is barred by the Exclusion 2(m) of the policy's Causes of Loss – Special Form, that precludes coverage for loss or damage caused by or resulting from the insured's neglect to use all reasonable means to preserve the property from further damage at and after the time of loss.

Defendant SSDD filed an Answer, Affirmative Defenses and Counterclaim. The two-count Counterclaim asserts state law claims for breach of the insurance contract and statutory vexatious refusal to pay the amounts due under the insurance policy, pursuant to §§ 375.420 and 375.296, Missouri Revised Statutes (2000).

The case is before the Court on Underwriters' motion to strike certain allegations of SSDD's answer and affirmative defenses and to dismiss SSDD's counterclaims. SSDD opposes all aspects of the motion and it is fully briefed. For the following reasons, the motion to strike will be granted in part and denied in part as to SSDD's answer and affirmative defenses. The motion to dismiss SSDD's counterclaims will be denied.

## I. Background

The Amended Complaint ("Complaint") alleges that Underwriters issued a Commercial Property Policy of insurance (the "Policy") to SSDD with a limit of $800,000 per occurrence, effective April 8, 2012 through April 8, 2013, for a building described in the Policy's declarations page as a "concrete brick church (LRO) at 4518 Blair, St. Louis, MO 63107" (the "Property"). On May 24, 2012, SSDD reported a vandalism claim to Underwriters with a date of loss of May 18, 2012. On or around June 17, 2012, a fire occurred at the Property and SSDD reported the fire to Underwriters on June 18, 2012. On July 24, 2012, SSDD provided notice of a claim for hail damage to the Property as a result of an April 28, 2012 hail storm.

The Complaint asserts that SSDD retained a public adjusting firm, Continental Adjusters, Inc., to provide it with an estimate of the value of each of the three claims. Underwriters retained its own consultants and experts to assist in determining the Actual Cash Value of each loss. SSDD's adjuster estimated the fire loss to the Property to be approximately $2.4 million, the vandalism loss to be approximately $2.5 million, and the hail damage loss to be approximately $452,000. Using calculations provided by its experts and applying policy deductibles, Underwriters estimated net loss potentially covered for the vandalism claim to be approximately $159,000, for the fire claim to be approximately $201,000, and for the hail claim to be approximately $11,000, and determined that the appropriate measure of loss sustained by SSDD was $372,840.98.

The Complaint asserts that on December 28, 2012, Underwriters sent a letter to SSDD offering a conditional payment of $372,840.98 in "full and final satisfaction of the three claims subject to a complete reservation of rights, since it is Underwriters' position that coverage is questionable and the Policy is subject to rescission." Complaint, Ex. F at 1. Underwriters asked SSDD to execute a W-9 so that the $372,840.98 payment could issue, but SSDD refused to do so and Underwriters continue to hold the conditional payment in trust.

## II. Motion to Strike

### A. Legal Standard

Under Rule 12(f) of the Federal Rules of Civil Procedure, a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f), Fed. R. Civ. P. Motions to strike are not favored and are infrequently granted, because they are an "extreme measure" and propose a drastic remedy. Stanbury Law Firm, P.A. v. Internal Revenue Service, 221 F.3d 1059, 1063 (8th Cir. 2000). Nonetheless, resolution of such a motion lies within the broad discretion of the court. Id.

In determining a motion to strike, this Court has applied several principles. The Court "must view the pleadings in the light most favorable to the pleader." Cynergy Ergonomics, Inc. v. Ergonomic Partners, Inc., 2008 WL 2817106, at *2 (E. D. Mo. July 21, 2008) (quoted case omitted). It should refrain from deciding new or close questions of law on a motion to strike due to the risk of offering an advisory opinion. Id. (citation omitted). Finally, a motion to strike should be denied unless the moving party shows it is "prejudiced by the inclusion of a defense or that a defense's inclusion confuses the issues." Id. (citations omitted). "The prejudice requirement is satisfied if striking the defense would, for example, prevent a party from engaging in burdensome discovery,

or otherwise expending time and resources litigating irrelevant issues that will not affect the case's outcome." Id. (citations omitted).

B. Motion to Strike Certain Allegations of SSDD's Answer

Underwriters move to strike various paragraphs of SSDD's Answer that assert "insufficient knowledge" in response to allegations made by Underwriters relating to the insurance claims SSDD submitted. Underwriters seek to strike paragraphs 18-24, 27-36, 38-39, 42-49, 52, 55 and 63 of SSDD's Answer on the basis that these answers violate Rule 8(b)(5), Fed. R. Civ. P., which states, "A party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial." Underwriters contend that SSDD's answers are evasive because "SSDD cannot fairly claim ignorance of allegations which lie at the core of its claims. The facts alleged in the Complaint were either provided to Underwriters by SSDD in the first instance or are a matter of public record and SSDD must admit or deny them." Underwriters' Mem. Supp. Mot. Strike at 5.

SSDD responds that nearly all of the paragraphs to which it responded that it lacked knowledge or information sufficient to form a belief "contain a litany of mixed allegations of law and fact and incorporate ambiguous terms," Response at 11, and "intermix facts outside of SSDD's knowledge with facts that may arguably be within SSDD's knowledge." Id. at 12. SSDD asserts that if Underwriters had "properly pleaded the facts regarding the claims which are actually at issue, SSDD may have been able to respond differently. Until SSDD knows exactly what is being alleged, it cannot unequivocally admit or deny anything." Id. at 13.

Rule 8 offers a party three ways to respond to the allegations of a pleading: The responding party must admit an allegation, deny the allegation, or explain that it is without sufficient knowledge or information to form a belief about the truth of the allegation. See Rule 8(b). "A party that intends

in good faith to deny only part of an allegation must admit the part that is true and deny the rest." Rule 8(b)(4). "A party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial." Rule 8(b)(5). The Rule also provides, "An allegation--other than one relating to the amount of damages--is admitted if a responsive pleading is required and the allegation is not denied. If a responsive pleading is not required, an allegation is considered denied or avoided." Rule 8(b)(6).

In responding to a complaint, "a party 'may not deny sufficient information or knowledge with impunity, but is subject to the requirements of honesty in pleading. An averment will be deemed admitted when the matter is obviously one as to which a defendant has knowledge or information.'" Djourabchi v. Self, 240 F.R.D. 5, 12 (D.D.C. 2006) (quoting David v. Crompton & Knowles Corp., 58 F.R.D. 444, 446 (E.D. Pa. 1973)). A leading federal practice treatise cautions that although "availability of the denial of knowledge or information sufficient to form a belief meets the dilemma of a pleader who lacks sufficient data to justify interposing either an honest admission or a denial of an opponent's averment . . . . [R]esort to this form of allegation should not be capricious." 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1262 (3d ed. 2010).

> A denial of knowledge or information requires that the party not only lack first-hand knowledge of the necessary facts involved but also that the pleader lack information upon which she reasonably could form a personal belief concerning the truth of the adversary's allegations. Normally, a party may not assert a lack of knowledge or information if the necessary facts or data involved are within his knowledge or easily brought within his knowledge, a matter of general knowledge in the community, or a matter of public record. A denial of knowledge or information in this context casts doubt on the good faith of the pleader. Furthermore, a federal court often will impute knowledge of certain matters to a party, such as charging a corporation with the knowledge of the acts of its agents, or will impose a reasonable burden of investigation upon the pleader.

Id. (emphasis added). "However, if knowledge of a fact cannot be ascertained within the time the party is given to answer with a modest expenditure of effort, a denial of knowledge or information is appropriate; the pleader is not compelled to make an exhaustive or burdensome search in order to determine the truth or falsity of his opponent's allegations." Id.

Although Underwriters move to strike thirty paragraphs of SSDD's Answer, they discuss and offer specific argument only with respect to paragraphs 3, 18, 20, 24 and 28. The Court will only address the sufficiency of these particular paragraphs, as it will not undertake to make Underwriters' arguments on their behalf.

Paragraph 3 of the Complaint (Doc. 5) states:

3.     SSDD is the Named Insured under the Policy. SSDD is a limited liability company organized under the laws of Delaware with its principal place of business in Dallas, Texas and SSDD is authorized and/or licensed to do business in Missouri. Paul Weismann is the sole owner, member, manager and shareholder of SSDD and is a citizen of Connecticut.

SSDD's Answer to paragraph 3 states:

3.     SSDD admits that it is the named insured on the Policy, but further states that there are legal conclusions contained in Paragraph 3 and, therefore, Paragraph 3 does not require a response. To the extent a response is required, SSDD denies the remainder of Paragraph 3.

As a threshold matter, many paragraphs of Underwriters' Complaint lend themselves to convoluted answers because they contain multiple factual assertions. It would be better practice to plead separate factual allegations in separate paragraphs. That being said, SSDD's answer to Paragraph 3 is inadequate and evasive. SSDD, as the entity at issue, has "knowledge or information sufficient to form a belief about the truth of the allegation," Rule 8(b)(5), concerning its states of incorporation and principal place of business, and therefore must either admit or deny those allegations. Similarly, SSDD has knowledge sufficient to form a belief about the truth of the

allegation that it is authorized or licensed to do business in the State of Missouri. Indeed, SSDD's Counterclaim demonstrates this knowledge, because SSDD alleges in its Counterclaim that it is a "Delaware limited liability company and a registered Missouri foreign limited liability company operating and doing business in St. Louis City, State of Missouri." Counterclaim ¶ 1 (Doc. 26). Finally, SSDD has knowledge sufficient to form a belief about the truth of the allegations that Paul Weismann is its "sole owner, member, manager and shareholder of SSDD," and is a citizen of Connecticut. If these allegations are partially correct, SSDD must "admit the part that is true and deny the rest." Rule 8(b)(4), Fed. R. Civ. P.

SSDD's answer that it need not respond to "legal conclusions" finds no support in the language of Rule 8(b), which requires a response to all allegations. See, e.g., Clarendon America Ins. Co. v. All Brothers Painting, Inc., 2013 WL 5921538, at *3 (M.D. Fla. Nov. 4, 2013) (citing cases); State Farm Mut. Auto Ins. Co. v. Riley, 199 F.R.D. 276, 278-79 (N.D. Ill. 2001).[1] In the context of this diversity case, it is important to recognize that the Complaint's allegations concerning the citizenship of SSDD's members are critical to the existence of subject matter jurisdiction. Indeed, the Court on its own motion ordered Underwriters to amend its complaint to allege, among other things, "the state of citizenship of each member of defendant SSDD, LLC, including the state of principal place of business for corporate members, and the state of citizenship of all members of any LLC or partnership members." Second Order to Show Cause at 2 (Doc. 4). To determine whether complete diversity of citizenship exists where limited liability companies such as defendant SSDD are parties to a case, the

---

[1]Even under the Supreme Court's recent pronouncements concerning pleading standards, legal conclusions remain an integral part of a complaint: "While legal conclusions can provide the framework for a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Most notably, a plaintiff's allegation of subject matter jurisdiction is certainly a legal conclusion, but it must be answered.

Court must examine the citizenship of each member of the limited liability company. GMAC Commercial Credit, LLC v. Dillard Dep't Stores, Inc., 357 F.3d 827, 829 (8th Cir. 2004). See Order to Show Cause at 5 (Doc. 2).[2]

The fact that SSDD's answer to paragraph 3 concludes with a general denial does not make the otherwise improper response proper. The failure to respond to the jurisdictional allegations is improper, and the concluding denial leaves plaintiffs and the Court to guess whether SSDD is denying the entire paragraph because it disputes all the averments, or because it disagrees with some part of the paragraph. Paragraph 3 of the Answer will be stricken and leave to replead granted.

Paragraph 18 of the Complaint alleges:

18.    On March 17, 2011 title to the building was assigned to SSDD and on January 4, 2012, SSDD filed eviction proceedings against EOM. On February 9, 2012 a "judgment for possession" was rendered in favor of SSDD and orders of eviction were entered on all three of the Property's addresses. However, the eviction was not enforced until May 15, 2012.

SSDD's Answer to Paragraph 18 states:

18.    SSDD has insufficient knowledge at this time to admit or deny Paragraph 18 and portions of Paragraph 18 call for legal conclusions and, therefore, SSDD denies same and demands strict proof thereof. SSDD further states that the judgment speaks for itself.

SSDD's answer to Paragraph 18 is evasive. SSDD is the owner of the building in question, for which it purchased insurance from Underwriters. SSDD should therefore have knowledge or information, or be able to obtain it with a modest expenditure of effort, sufficient to form a belief about the truth of the factual allegations in all three sentences of Paragraph 18: (1) whether title to

---

[2]The Court notes that SSDD's Counterclaim fails to adequately allege its own citizenship for purposes of diversity jurisdiction, as SSDD merely alleges the state of its incorporation, which is not relevant to its citizenship. See GMAC, 357 F.3d at 829. The jurisdictional allegations of SSDD's Counterclaim concerning Underwriters' citizenship are also deficient. See generally Order to Show Cause at 5 (Doc. 2).

the building was assigned to it on March 17, 2011; (2) whether SSDD filed eviction proceedings against EOM on January 4, 2012; (3) whether SSDD obtained a "judgment for possession" on February 9, 2012; (4) whether orders of eviction were entered on all three of the Property's addresses on February 9, 2012; and (5) whether the orders of eviction were enforced on May 15, 2012. In responding, SSDD must be mindful that Rule 8(b)(2) states a denial "must fairly respond to the substance of the allegation."

SSDD's objection to the alleging of "legal conclusions" is improper for the reasons discussed above. SSDD may not deny an allegation on the basis that it states a legal conclusion, and must admit or deny the allegation based on its substance. Further, SSDD's demand for "strict proof" and its response that the judgment referred to "speaks for itself" add nothing to its Answer, and do not conform to Rule 8(b)'s requirement that a responding party admit or deny the relevant allegations. See State Farm, 199 F.R.D. at 278-79. Paragraph 18 of the Answer will be stricken and leave to replead granted.

Paragraph 20 of the Complaint alleges:

20.  On May 24, 2012, SSDD reported a vandalism claim to IPSI ("the Vandalism Claim"). An Acord Property Loss Notice submitted on June 15, 2012 identified a "Date of Loss" of "5/18/12." It stated: "Unknown person vandalized building." A true and accurate copy of the June 15, 2012 Loss Notice is attached hereto as Exhibit B.

SSDD's Answer to Paragraph 20 states:

20.  SSDD admits that it reported a claim for theft/vandalism, but has insufficient knowledge at this time to admit or deny the remainder of Paragraph 20 and, therefore, SSDD denies same and demands strict proof hereof. SSDD further states that Exhibit B speaks for itself and to the extent that a response is required, SSDD denies the remainder of allegations in Paragraph 20.

SSDD's Answer to Paragraph 20 is evasive because it is the party that reported the theft/vandalism claim at issue, and therefore has knowledge or information, or can readily obtain

knowledge or information, sufficient to form a belief about the truth of the allegations in Paragraph

20. SSDD's use of the document "speaks for itself" objection and its vague concluding denial are also

improper. Paragraph 20 of the Answer will be stricken with leave to replead granted.

Paragraph 24 of the Complaint alleges:

24.     SSDD reported the Fire to IPSI on June 18, 2012.

SSDD's Answer to Paragraph 24 states:

24.     SSDD admits that it reported the fire claim, but has insufficient knowledge at
        this time to admit or deny the remainder of Paragraph 24 and, therefore, SSDD
        denies same and demands strict proof thereof.

SSDD's Answer to paragraph 24 is evasive. As the party that reported the fire claim, SSDD

has, or can easily obtain, knowledge or information sufficient to form a belief about the truth of

Underwriters' allegation that the claim was reported to IPSI on June 18, 2012. SSDD's demand for

"strict proof" is improper. Paragraph 24 of the Answer will be stricken with leave to replead.

Similarly, Paragraph 28 of the Complaint alleges:

28.     On July 24, 2012, SSDD provided notice of a claim for purported "hail
        damage" to the Property as a result of an April 28, 2012 hail storm.

SSDD's Answer to Paragraph 28 states:

28.     SSDD admits that it provided notice of the claim for hail damage, but has
        insufficient knowledge at this time to admit the remainder of Paragraph 28 and,
        therefore, SSDD denies same and demands strict proof thereof.

SSDD's answer to Paragraph 28 is evasive. As the party that admits it submitted notice of the

hail damage claim, SSDD has or can easily obtain knowledge or information sufficient to form a belief

about the truth of the allegations concerning the date it provided that notice, and the date of the hail

storm. SSDD's demand for "strict proof" is improper. Paragraph 28 of the Answer will be stricken

with leave to replead.

Although the Court will not review the other paragraphs of SSDD's Answer that are targeted by Underwriters' Motion to Strike but were not supported by pertinent argument, SSDD's counsel shall, prior to filing an amended answer, consider whether any other paragraphs of the Answer as pleaded fail to comply with the requirements of Rule 8(b), Fed. R. Civ. P.  As to each allegation of the Complaint, SSDD must either admit, deny, or state in good faith that it lacks sufficient knowledge or information to form a belief as to the truth of the allegation.  SSDD shall avoid the use of colloquialisms and surplusage such as that a "document speaks for itself" and demanding "strict proof," and shall not refuse to answer any allegations on the basis that they contain legal conclusions, as Rule 8(b) provides no basis for such responses.

C.  Motion to Strike SSDD's Affirmative Defenses

Underwriters also move to strike all of SSDD's affirmative defenses, which are as follows:

1. Underwriters' Complaint for Declaratory Judgment should be dismissed for failing to state a claim for which relief may be granted.

2. Underwriters' actions and/or omissions in violation of the common law duty of good faith and fair dealing constitutes [*sic*] waiver.

3.  SSDD asserts that the causes of damage are perils covered under the terms of the Policy and SSDD is entitled to full payment for its covered losses.

4. Public policy and judicial economy demonstrate that Underwriters' position is untenable.

5.  Underwriters has [*sic*] failed to comply with the Policy's appraisal provision.

6. Underwriters has [*sic*] failed to comply with the conditions under the Policy by failing to produce its reports and estimate to SSDD.

7.  Underwriters position is not supported by language in the Policy. Ambiguities in the terms of the Policy, if any, should be construed against Underwriters and in favor of coverage of the insured.

8. Underwriters has [*sic*] failed to substantially perform and/or substantially comply with the terms of the Policy.

9. Any Policy provision in contravention of Missouri Statutes or Missouri law are [*sic*] deemed voided and inapplicable.

10. Underwriters' claims are barred by the doctrine of unclean hands.

11. The exclusionary provisions in the Policy are vague and ambiguous and should be resolved in favor of the insured.

12. Underwriters' claims are barred by the doctrine of estoppel.

13. Underwriters' claims are barred because each count only requests a remedy from this Court, instead of stating a cause of action.

14. To the extent that there were any misrepresentations contained within the application for the Policy (which SSDD denies), none of the misrepresentations were fraudulent.

15. To the extent that there were any misrepresentations contained within the application for the Policy (which SSDD denies), none of the misrepresentations were material.

16. SSDD reserves any and all defenses and affirmative defenses that may come to light upon conducting discovery in this matter.

SSDD Answer, Affirmative Defenses and Counterclaim at 8-10 (Doc. 26).

Underwriters argue that each defense is inadequately pleaded and should be stricken for various reasons, including that they are conclusory, legally insufficient, nonsensical, redundant of SSDD's counterclaim, fail to include a factual basis, and are too general to give fair notice of the basis of the defense. Underwriters contend that striking these defenses would "prevent [them] from engaging in burdensome discovery and expending time and resources litigating irrelevant events that will not affect the case's outcome." Mem. Supp. Mot. Strike at 10. Except as to affirmative defenses No. 1 and No. 16, however, Underwriters fail to cite any legal authority in support of their assertion that each affirmative defense is insufficient or otherwise improper.

The Eighth Circuit has not addressed whether affirmative defenses must meet the same pleading requirements as claims. A leading federal practice treatise takes the position that a more lenient standard applies to affirmative defenses: "Rule 8 requires only that a party 'affirmatively state' any avoidance or affirmative defense." 2 James Wm. Moore, et al., Moore's Federal Practice § 8.08[1] (3d ed. 2013) (quoting Rule 8(c), Fed. R. Civ. P.). As a result, "Under Rule 8, the pleader of an affirmative defense need only 'state' the defense, but need not 'show' anything in order to survive a motion to strike." Id. This Court has adopted that approach. See Fleishour v. Stewart Title Guar. Co., 640 F.Supp.2d 1088, 1090 (E. D. Mo. 2009) (Under Rule 8(c), a defendant "is required to plead only affirmative defenses, not evidence or facts."); Fluid Control Prods., Inc. v. Aeromotive, Inc., 2010 WL 427765, at *3 (E.D. Mo. Feb. 1, 2010).[3]

"As with material in a complaint, the movant must make a strong showing to succeed in striking an affirmative defense. It should be stricken only when it is insufficient on the face of the pleadings." 2 Moore's Federal Practice § 12.37[4]. This Court has stated that motions to strike affirmative defenses "should not be granted 'unless, as a matter of law, the defense cannot succeed under any circumstances.'" Champion Bank v. Regional Dev., LLC, 2009 WL 1351122, at *4 (E.D. Mo. May 13, 2009) (quoting FDIC v. Coble, 720 F. Supp. 748, 750 (E.D. Mo. 1989)).

Applying this standard, the Court finds that Underwriters' motion to strike SSDD's affirmative defenses should be denied, except as to affirmative defenses No. 1 (failure to state a claim), No. 5 (failure to comply with Policy's appraisal provision) and No. 16 (reservation of "any and all defenses and affirmative defenses that may come to light"). Affirmative defenses No. 1 and No. 5 are

---

[3]The Court recognizes that some other judges in this district have held that the pleading standards articulated in Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), apply to affirmative defenses.

insufficient on the face of the pleading because the Court has denied SSDD's motion to dismiss the Complaint for failure to state a claim upon which relief can be granted, and held that Underwriters was not required to comply with the Policy's appraisal provision prior to filing this action. <u>See</u> Mem. and Order of May 31, 2013 at 11-13 (Doc. 22). Affirmative defense No. 16 is insufficient because this Court has held that statements in pleadings purporting to reserve any and all rights to assert additional affirmative defenses are insufficient as a matter of law. <u>See</u>, <u>e.g.</u>, <u>Handi-Craft Co. v. Travelers Cas. and Sur. Co. of America</u>, 2012 WL 1432566, at *5 (E.D. Mo. Apr. 25, 2012). If SSDD discovers an additional affirmative defense, it must seek leave of Court to amend its Answer pursuant to Rule 15(a)(2), Fed. R. Civ. P.

As for the remainder of the defenses, Underwriters have failed to meet their burden to show that the defenses cannot succeed under any circumstances, because they cite no supporting authority in support of their arguments. Underwriters have not established prejudice as a result of the inclusion of these defenses, as it does not appear burdensome discovery would be required for them to inquire about the factual and legal basis of each asserted defense. <u>See</u> <u>Cynergy Ergonomics</u>, 2008 WL 2817106, at *2. The mere investigation of affirmative defenses through standard discovery does not constitute prejudice to Underwriters. <u>See</u> <u>Fluid Control</u>, 2010 WL 427765, at *3.

For these reasons, Underwriters' motion to strike SSDD's affirmative defenses should be granted as to affirmative defenses No. 1, No. 5 and No. 16, and denied in all other respects.

## III.  Motion to Dismiss

Underwriters also move to dismiss SSDD's counterclaims for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), Fed. R. Civ. P. The parties agree that Missouri substantive law applies to this case.

A. Legal Standard

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. To survive a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, "a [counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A counterclaim plaintiff need not provide specific facts in support of its allegations, Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (citing Twombly, 550 U.S. at 555 & n.3). This obligation requires a counterclaim plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. A counterclaim "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." Id. at 562 (quoted case omitted). This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." Id. at 556.

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the counterclaim even if it appears that "actual proof of those facts is improbable," id. at 556, and reviews the counterclaim to determine whether its allegations show that the pleader is entitled to relief. Twombly, 550 U.S. at 555-56; Fed. R. Civ. P. 8(a)(2). The principle that a court must accept as true all of the allegations contained in a counterclaim is inapplicable to legal conclusions, however. Iqbal, 129 S. Ct. at 1949-50 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Although legal conclusions can provide the framework

for a counterclaim, they must be supported by factual allegations. <u>Id.</u> at 1950. Plausibility is assessed by considering only the materials that are "necessarily embraced by the pleadings and exhibits attached to the" counterclaim. <u>Whitney v. Guys, Inc.</u>, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoted case omitted). The plausibility of the counterclaim plaintiff's claim is reviewed "as a whole, not the plausibility of each individual allegation." <u>Zoltek Corp. v. Structural Polymer Grp.</u>, 592 F.3d 893, 896 n.4 (8th Cir. 2010).

B. <u>Discussion</u>

Underwriters move to dismiss SSDD's counterclaims for breach of contract (Count I) and statutory vexatious refusal to pay (Count II). The Court will discuss each claim separately.

*1. Breach of Contract – Count I*

With respect to SSDD's breach of contract claim, Underwriters state that under Missouri law, "A breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." <u>Keveney v. Missouri Military Academy</u>, 304 S.W.3d 98, 104 (Mo. 2010) (en banc). Underwriters contend that Count I "does not state a coherent claim for relief, fails to allege facts supporting the claim, and reaches an implausible conclusion. SSDD has failed to allege with specificity [its] performance under the alleged policy and whether [it] fulfilled [its] obligations." Underwriters' Mem. Supp. Mot. Dismiss at 12.

The Court finds that SSDD has adequately alleged a breach of contract claim. SSDD alleges that: (1) it owns real property that was insured by Underwriters under a commercial property policy with specified effective dates; (2) the policy provided coverage against physical loss or damage up to $800,000 per occurrence; (3) SSDD had paid all premiums and the policy was in full force and effect; (4) during the effective period of the policy, the property suffered damage as a result of

theft/vandalism, fire and hail; (5) SSDD timely notified Underwriters of damage to the property as a result of these occurrences and made three separate claims for damages under the policy; (6) SSDD retained a public adjuster to provide it with an estimate of the occurrences; (7) the policy provides coverage for damages caused by theft/vandalism, fire and hail; (8) Underwriters are refusing to pay SSDD for all of the damage to the property caused by the three occurrences; and (9) as a result of this refusal to pay, Underwriters have breached the terms of the policy and SSDD has suffered damages. See Counterclaim ¶¶ 5-22.

SSDD's breach of contract claim includes "sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." Schaaf, 517 F.3d at 549 (citing Twombly, 550 U.S. at 555 & n.3). It is not necessary for SSDD to provide specific facts in support of its allegations. See Erickson, 551 U.S. at 93. Underwriters' motion to dismiss Count I of SSDD's Counterclaim should therefore be denied.

### B. Vexatious Refusal to Pay - Count II

Underwriters move to dismiss SSDD's Counterclaim for statutory vexatious refusal to pay pursuant to §§ 375.420 and 375.296 of the Missouri Revised Statutes, asserting that SSDD "fails to allege relevant facts or the breach of a specific term of the insurance policy as required to state such a claim." Underwriters also state that under § 375.296, an insured must make a "due demand" for payment after which the insurer has a thirty-day period to pay under the contract, and that SSDD never demanded a specific amount from Underwriters so the thirty-day statutory period did not begin to run. In addition, Underwriters assert it is "simply wrong" for SSDD to allege they refused to pay its claims, because Underwriters issued a reservation of rights letter to SSDD that made a good faith conditional offer to resolve its claims. Underwriters also assert that SSDD does not have standing to raise a claim under § 375.296 because the statute requires the policy to have been delivered, as relevant here, to "a

corporation incorporated in or authorized to do business in this state," and SSDD denied in its Answer that it was authorized and/or licensed to do business in Missouri.

The Court notes that Underwriters' motion does not discuss the elements of a cause of action for vexatious refusal to pay, and does not cite a single case authority in support of their argument for dismissal of this count.[4]

Under Missouri law, "A claim of vexatious refusal to pay requires proof (1) of an insurance policy, (2) of the insurer's refusal to pay and (3) that the insurer's refusal was without reasonable cause or excuse." D.R. Sherry Constr., Ltd. v. American Family Mut. Ins. Co., 316 S.W.3d 899, 907 (Mo. 2010) (en banc) (cited case omitted). Missouri has two different statutes that permit an insured to seek additional damages from an insurer based on a vexatious refusal by the insurer to pay proceeds

---

[4]In their Reply memorandum, Underwriters add a new argument in support of their motion to dismiss: that under a recent decision cited by SSDD in its opposition memorandum, Irish v. Allied Property & Casualty Insurance Co., 2013 WL 3773982, at *2 (W.D. Mo. July 18, 2013), the vexatious refusal statute § 375.296, Mo. Rev. Stat., applies only to insurance companies not authorized to transact business in Missouri. Underwriters state that many Lloyd's insurance syndicates, including Syndicate 4444 which Underwriters allege in the Complaint subscribed to 100% of the risk under Certificate No. IPSI 12559, have been "white listed" by the Missouri Department of Insurance and licensed as eligible surplus lines insurers in Missouri. Thus, Underwriters argue that § 375.296 cannot apply to it. In support, Underwriters attach to their Reply a photocopy of a portion of the Missouri Department of Insurance website's "White List" of eligible surplus lines insurers.

The Court will not address this argument for two reasons. First, it is a new argument improperly raised in a reply, and therefore SSDD has not had an opportunity to respond to it. Second, Underwriters seek to introduce matters outside the pleadings in support of this argument. Whenever matters outside the pleadings are presented and not excluded by the Court, the motion must be treated as one for summary judgment under Rule 56. See Rule 12(d), Fed. R. Civ. P.; McAuley v. Federal Ins. Co., 500 F.3d 784, 787 (8th Cir. 2007). Parties are entitled to notice when such a conversion is occurring and must be provided the opportunity to present all material pertinent to the motion. See Rule 12(d); Country Club Estates, L.L.C. v. Town of Loma Linda, 213 F.3d 1001, 1005 (8th Cir. 2000). The Court declines to treat Underwriters' motion to dismiss as a motion for summary judgment, and will exclude from consideration all matters outside the pleadings.

due to the insured.  See Overcast v. Billings Mut. Ins. Co., 11 S.W.3d 62, 66 n.3 (Mo. 2000) (en banc).

One of the statutes, § 375.420, provides:

> In any action against any insurance company to recover the amount of any loss under a policy of automobile, fire, cyclone, lightning, life, health, accident, employers' liability, burglary, theft, embezzlement, fidelity, indemnity, marine or other insurance except automobile liability insurance, if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict.

§ 375.420, Mo. Rev. Stat.

> The second vexatious refusal statute, § 375.296, provides:

> In any action, suit or other proceeding instituted against any insurance company, association or other insurer upon any contract of insurance issued or delivered in this state to a resident of this state, or to a corporation incorporated in or authorized to do business in this state, if the insurer has failed or refused for a period of thirty days after due demand therefor prior to the institution of the action, suit or proceeding, to make payment under and in accordance with the terms and provisions of the contract of insurance, and it shall appear from the evidence that the refusal was vexatious and without reasonable cause, the court or jury may, in addition to the amount due under the provisions of the contract of insurance and interest thereon, allow the plaintiff damages for vexatious refusal to pay and attorney's fees as provided in section 375.420.  Failure of an insurer to appear and defend any action, suit or other proceeding shall be deemed prima facie evidence that its failure to make payment was vexatious without reasonable cause.

§ 375.296, Mo. Rev. Stat.

Underwriters' assertion that SSDD has failed to allege relevant facts relating to breach of a specific term of the insurance contract is without merit.  SSDD has pleaded the elements of a cause of action for vexatious refusal to pay under Missouri law.  See D.R. Sherry Construction, 316 S.W.3d at 907.  Further, the Court previously found that SSDD adequately alleged a breach of contract claim. Underwriters' assertion that SSDD has never demanded payment of a specific amount does not

challenge SSDD's pleading of an element of the cause of action for vexatious refusal to pay. In addition, this assertion ignores SSDD's allegation in the Counterclaim that it made a demand for payment. As such, Underwriters' argument raises a fact issue, as opposed to a pleading issue that can properly be addressed on a motion to dismiss.

Underwriters' assertion, raised for the first time in their Reply, that SSDD should have pleaded the "critical fact" of the date of its purported demand for payment, seeks to impose a detailed fact pleading requirement on SSDD that does not exist. Underwriters' argument that they cannot have vexatiously refused to pay SSDD because they made it a conditional settlement offer is not supported by citation to any legal authority, and as such raises a fact issue that cannot be resolved on a motion to dismiss.[5]

Underwriters also assert that SSDD lacks standing to assert a claim under § 375.296 because it is not a corporation licensed or authorized to do business in Missouri. SSDD responds that it alleges in the Counterclaim it is a "registered Missouri foreign limited liability company operating and doing business in St. Louis City, State of Missouri." Counterclaim ¶ 1. Assuming for purposes of argument that SSDD is required to allege in its Counterclaim that it is authorized to do business in Missouri in order to avoid dismissal, it has done so.

In response to Underwriter's argument that SSDD's jurisdictional allegations in its Counterclaim are inconsistent with its answer to the Complaint's jurisdictional allegations, SSDD argues that it can plead in the alternative and inconsistently under Rule 8(d)(3), so the fact that its

_____

[5]Underwriters assert in their Reply memorandum that SSDD's Counterclaim consists of "nothing but baseless factual conclusions with occasional references to legal conclusions." Reply at 7. A "factual conclusion" is a legal concept with which the Court is unfamiliar. It is unclear how a "factual conclusion" differs from an allegation of fact, and Underwriters offer no explanation or authority to support their contention that it is improper for a party to plead a "factual conclusion."

Answer denied Underwriters' assertions concerning its citizenship information as legal conclusions is not improper. While SSDD's assertion concerning inconsistent pleading is true as a general proposition, see Rule 8(d)(3), 5 Wright & Miller, Federal Practice & Procedure § 1283, SSDD must respond to jurisdictional allegations and has been ordered to replead its answer in this respect, so this point is moot.[6]

Finally, Underwriters assert for the first time in their Reply memorandum that SSDD "is not a corporation; it is an LLC with one member who resides in Connecticut," Reply at 6, and therefore lacks standing to sue under § 375.296 because it is neither a "resident" of Missouri nor a "corporation." The Court will not consider this argument because SSDD has not had an opportunity to respond to it. Further, even if the argument were addressed in the future and determined to have merit, SSDD would still be able to assert a claim under the other Missouri vexatious refusal statute, § 375.420. For these reasons, Underwriters' motion to dismiss SSDD's Counterclaim for statutory vexatious refusal to pay should be denied.

## IV. Conclusion

For the foregoing reasons, the Court finds that Underwriters' motion to strike defendant SSDD's Answer should be granted in part and denied in part as discussed above, and SSDD will be granted leave to replead its answer in accordance with Rule 8(b), Fed. R. Civ. P.; Underwriters' motion to strike SSDD's affirmative defenses should be granted in part and denied in part as discussed

---

[6]The Complaint alleges complete diversity of citizenship among the parties, and that the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). Assuming without deciding that SSDD's counterclaims are compulsory, the Court would have supplemental jurisdiction over the counterclaims. See Rule 13(a) (defining compulsory counterclaim); Shelter Mut. Ins. Co. v. Public Water Supply Dist. No. 7, 747 F.2d 1195, 1197 (8th Cir. 1984) ("[A] separate statement alleging jurisdiction is not necessary to support a compulsory counterclaim[.]"). As previously noted *supra* at n.2, however, SSDD's Counterclaim does not contain adequate factual allegations concerning the parties' citizenship to independently invoke the Court's diversity jurisdiction.

above; and Underwriters' motion to dismiss SSDD's Counterclaims for failure to state a claim upon which relief may be granted should be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Underwriters' Motion to Strike Certain Allegations of SSDD's Answer is **GRANTED in part** and **DENIED in part**; the motion is **GRANTED** as to paragraphs 3, 18, 20, 24 and 28 of SSDD's Answer and those paragraphs are hereby **stricken**, and the motion is **DENIED** in all other respects.  [Doc. 31]

**IT IS FURTHER ORDERED** that defendant SSDD shall replead paragraphs 3, 18, 20, 24 and 28 of its Answer, and any other paragraphs of its Answer as currently pleaded that fail to comply with the requirements of Rule 8(b), Fed. R. Civ. P.  As to each allegation of the Amended Complaint, SSDD must either admit, deny, or state in good faith that it lacks sufficient information and knowledge to form a belief as to the truth of the allegation.  SSDD shall avoid the use of colloquialisms and surplusage such as that a document "speaks for itself" and demanding "strict proof," and SSDD shall not refuse to answer any allegations on the basis that they contain legal conclusions, as Rule 8(b) provides no basis for such responses.

**IT IS FURTHER ORDERED** that defendant SSDD's Amended Answer shall be filed within fourteen (14) days of the date of this Memorandum and Order.

**IT IS FURTHER ORDERED** that Underwriters' Motion to Strike SSDD's Affirmative Defenses is **GRANTED in part** and **DENIED in part**; the motion is **GRANTED** as to Affirmative Defenses Nos. 1, 5 and 16, and **DENIED** in all other respects.  [Doc. 31]

**IT IS FURTHER ORDERED** that Underwriters' Motion to Dismiss SSDD's Counterclaims

is **DENIED**.  [Doc. 31]


_Charles A. Shaw_ _____

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**


Dated this  23rd  day of December, 2013.